## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF CONNECTICUT

---

PAUL MCHUGH, individually and on behalf of
a class of all persons and entities similarly
situated,

          Plaintiff

vs.

HEALTHPLANONE, LLC and CRISP
MARKETING LLC

          Defendants.

Case No.

---

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      As the Supreme Court explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      However, the TCPA doesn't only restrict robocalls and as the Fourth Circuit Court of Appeals has explained, "[t]elemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone

marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9)"

3.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

4.      Plaintiff Paul McHugh ("Plaintiff") brings this action under the TCPA alleging that Crisp Marketing, LLC ("Crisp Marketing") was hired by HealthPlanOne, LLC ("HealthPlanOne") to send pre-recorded messages for the purposes of promoting their goods and services, including to individuals who were on the National Do Not Call Registry. Such calls were made without the call recipient's prior express written consent.

5.      Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

6.      A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7.      Plaintiff Paul McHugh is an individual.

8.      Defendant HealthPlanOne, LLC is a limited liability company with its principal place of business in this District.

9.      Defendant Crisp Marketing Marketing, LLC is a Florida limited liability company.

## Jurisdiction & Venue

10.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11.      HealthPlanOne, LLC is subject to personal jurisdiction as it is headquartered in this District.

12.     Crisp Marketing LLC is subject to personal jurisdiction as it made the pre-recorded calls that were organized in this District and it agreed to resolve any disputes regarding its agreement with HealthPlanOne in this District.

13.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were organized from this District.

## The Telephone Consumer Protection Act

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

15.     The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an artificial or prerecorded voice to any residential telephone number.  *See* 47 U.S.C. § 227(b)(1)(B).

16.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).  *See* 47 U.S.C. § 227(b)(3).

17.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do Not Call Registry

19.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

20.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

21.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## **Factual Allegations**

22.     HealthPlanOne provides insurance services to consumers.

23.     HealthPlanOne uses telemarketing to promote its products and solicit new clients.

24.     HealthPlanOne hires third parties to facilitate those telemarketing calls, such as Crisp Marketing.

25.     These telemarketing efforts include the use of automated calls to send prerecorded messages.

26.     HealthPlanOne authorized these calls despite the fact that Crisp Marketing has been sued for this same conduct. *See e.g. Batista v. Crisp Marketing, LLC,* Civil Action No. 21-cv-60217 (S.D. Fl.)

27.     The Plaintiff received a pre-recorded call from Crisp Marketing who HealthPlanOne hired to send telemarketing calls and consistent with HealthPlanOne's instruction on July 26 and 27, 2022.

28.     The calls were received on 321-213-XXXX.

29.     This is the Plaintiff's cellular telephone number.

30.     That is the Plaintiff's residential telephone number.

31.     That number is not associated with a business and is used for personal purposes.

32.     That number has been on the National Do Not Call Registry since June 18, 2022.

33.     The pre-recorded message began by identifying "Medicare rewards".

34.     The pre-recorded message continued to inquire if the call recipient was over the age of 65 and if they had Medicare.

35.     The Plaintiff was not interested and connected on the July 26, 2022 call with a live agent to tell them he was not interested.

36.     Despite that, the Plaintiff received the same call on July 27.

37.     During the July 27 call the Plaintiff identified who was behind the fictional "Medicare rewards" by speaking to a live agent after the pre-recorded call.

38.     He did so by speaking with a "Vernon Reed", who advertised the Medicare supplemental insurance services of HealthPlanOne.

39.     Mr. Reed then provided the Defendant's website and callback number.

40.     The message that the calls delivered was clearly pre-recorded because (a) there was a delay after the Plaintiff answered the line (b) a "click" to play the pre-recorded message was heard by the Plaintiff prior to the pre-recorded message (c) the pre-recorded message was monotone, non-personalized and generic (d) the Plaintiff received other telemarketing calls that delivered the identical pre-recorded message.

41.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

42.     Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

**HealthPlanOne's Liability for Crisp Marketing's Conduct**

43.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

44.     In fact, the Federal Communication Commission has instructed that sellers such as HealthPlanOne Insurance may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer

that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) ("May 2013 FCC Ruling") (internal citations omitted).

45.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586, ¶ 34.

46.     HealthPlanOne is liable for the telemarketing calls that were initiated by Crisp Marketing.

47.     First, HealthPlanOne hired Crisp Marketing to send the pre-recorded calls despite the fact that Crisp Marketing has been sued for engaging in pre-recorded calling conduct that is alleged to have violated the TCPA.

48.     HealthPlanOne hired Crisp Marketing to originate new business using telemarketing calls.

49.     HealthPlanOne could have restricted Crisp Marketing from calling consumers using a pre-recorded message, but it did not.

50.     HealthPlanOne accepted the benefits of Crisp Marketing's illegal telemarketing by accepting leads directly from Crisp Marketing, despite the fact that those leads were generated through illegal telemarketing.

51.     Indeed, HealthPlanOne had the ability to know that the numbers being called were on the National Do Not Call Registry.

52.     HealthPlanOne determined the parameters and qualifications for customers to be transferred and required Crisp Marketing to adhere to those requirements.

53.     HealthPlanOne gave interim instructions to Crisp Marketing, including instructions as to the geographic areas to target, the hours Crisp Marketing could call, and the volume of calling.

54.     By having Crisp Marketing initiate the calls on its behalf to generate new business, HealthPlanOne "manifest[ed] assent to another person ... that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

55.     HealthPlanOne reviewed and approved the Crisp Marketing scripts for determining whether a customer was eligible to be transferred, as discussed in the May 2013 FCC Ruling.

56.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information."  *Id.* at 6592-593, ¶ 46.  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593, ¶ 46.

## Class Action Statement

57.     Plaintiff brings this action on behalf of himself and the following Classes (the

"Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) or (b)(3).

58.     Plaintiff proposes the following Class definitions, subject to amendment as

appropriate:

**Robocall Class:** All persons within the United States: (1) to whose cellular telephone line (2) any of the Defendants, or a call center they hired (3) made a pre-recorded call (4) from four years prior to the filing of the case through the date of class certification.

**Do Not Call Registry Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

59.     Plaintiff is a member of this classes and will fairly and adequately represent and

protect the interests of this classes as he has no interests that conflict with any of the class

members.

60.     Excluded from the Class are counsel, the Defendants, and any entities in which

the Defendant has a controlling interest, the Defendants' agents and employees, any judge to

whom this action is assigned, and any member of such judge's staff and immediate family.

61.     Plaintiff and all members of the Class have been harmed by the acts of the

Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time,

the use of their telephone power and network bandwidth, and the intrusion on their telephone that

occupied it from receiving legitimate communications.

62.     The Class as defined above are identifiable through the Defendants' dialer

records, other phone records, and phone number databases.

63.    Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each class.

64.    The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

65.    Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

66.    There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

67.    There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

(a)  Whether the Defendants used pre-recorded message to send telemarketing calls;

(b)  Whether the Defendants made telemarketing calls to numbers on the National Do Not Call Registry Class;

(c)  Whether HealthPlanOne is vicariously liable for any of the pre-recorded call conduct;

(d)  whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(e)  whether Defendants' conduct constitutes a violation of the TCPA; and

(f)  whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

68.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has no interests which are antagonistic to any member of the Class.

69.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions.  Plaintiff and his counsel are

11

committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

70.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

71.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

72.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

<u>**FIRST CAUSE OF ACTION**</u>

**Violation of the Telephone Consumer Protection Act
47 U.S.C. 227(b) on behalf of the Robocall Class**

73.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

74.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

75.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the Class presumptively are entitled to an award of $500 in damages for each and

every call made to their cellular telephone numbers using an artificial or prerecorded voice in

violation of the statute, pursuant to 47 U.S.C. § 227.

76.     If the Defendants' conduct is found to be knowing or willful, the Plaintiff and

members of the Class are entitled to an award of up to treble damages.

77.     Plaintiff and members of the Class are also entitled to and do seek injunctive

relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting

on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for

emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice

in the future.


### SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

78.     Plaintiff repeats and incorporates the prior allegations as if fully set forth herein.

79.     The foregoing acts and omissions of Defendants and/or its affiliates, agents,

and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple

violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency

purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call

Registry.

80.     The Defendants' violations were negligent, willful, or knowing.

81.     As a result of Defendants' and/or its affiliates, agents, and/or other persons or

entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

82.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.     Injunctive relief prohibiting Defendants from calling cellular telephone numbers advertising their goods or services, except for emergency purposes, using a pre-record message or making telemarketing calls to numbers on the National Do Not Call Registry in the future;

B.     That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

C.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

14

Plaintiff,
By Counsel,

By: */s/ Anthony Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(617) 485-0018
anthony@paronichlaw.com